IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE O.[1], <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security[2], <br><br> Defendant. | Case No. 22 C 6666 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diane O. appeals the decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits. Because the administrative law judge did not sufficiently support his decision to disregard the opinion of Plaintiff's doctor when assessing her residual functional capacity (RFC), the Court grants Plaintiff's motion for summary judgment [13], denies the Commissioner's motion for summary judgment [18], and remands this case for further proceedings.

**BACKGROUND[3]**

Plaintiff had some medical issues including fibromyalgia and asthma but was otherwise able to care for her two children and work a full-time job as a sales associate at Men's Warehouse for about 10 years. (R. at 46). This changed in the fall of 2017 when she witnessed a fatal car

---

[1] Pursuant to Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of her last name.

[2] In accordance with Fed. R. Civ. P. 25(d), Frank J. Bisignano, the current Commissioner of Social Security, is substituted as defendant. (Dkt. 25).

[3] Because the record in this matter is voluminous, the Court focuses on the pertinent records discussed in this appeal. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[A]ll summaries must be partial and selective.").

accident in September and then was involved in a car accident herself in November. (R. at 45). Plaintiff thereafter began to suffer from seizures and increased pain from her fibromyalgia which prevented her from returning to work. (R. at 48, 54).

In January 2018, she was admitted to the hospital and underwent an electroencephalogram (EEG) which captured one of her seizure-like events. (R. at 310). Plaintiff was referred for both neurology and psychiatry evaluations after the seizure-like activity was determined to be non-epileptic pseudo-seizures that were psychological in origin. (R. at 315, 321). The doctor noted a diagnosis of conversion disorder[4], recommended psychotherapy as "the primary treatment to process traumatic experiences and help her learn coping mechanisms" and indicated "there is no pharmacologic treatment for conversion disorder." (R. at 321).

Plaintiff began therapy sessions with Dr. Gary Coleman, a psychiatrist, in March 2018, and saw him for a couple of months before seeing a different doctor until she lost her job and insurance coverage. (R. at 1159). In June 2018 she had another neurology consultation and was told not to drive, take baths, or swim alone. (R. at 341-345). It was again recommended that cognitive behavioral therapy (CBT) was the best treatment for her condition. (R. at 344). In her application for benefits, Plaintiff alleged a disability onset date of November 2018. (R. at 13).

Plaintiff went to the emergency room nine times in 2019, primarily for pain and seizures as well as repeated incidents of nausea and vomiting. (R. at 24-27). She resumed seeing Dr. Coleman in March 2019 for outpatient psychotherapy. (R. at 1159). During this period of multiple ER visits, her primary care provider, Dr. Victoria Johnson, noted that she had the maximum amount of pain medication that could safely be prescribed at home and recommended continuing

---

[4] Conversion disorder, now known as functional neurological symptom disorder, "is a psychiatric disorder characterized by symptoms affecting sensory or motor function inconsistent with patterns of known neurologic diseases or other medical conditions and significantly impacting the patient's ability to function." https://www.ncbi.nlm.nih.gov/books/NBK551567/ (last visited December 20, 2025).

neurofeedback therapy as well as "heat, hot bath, relaxation techniques, massage/manual therapy, [and] light exercise such as walking." (R. at 669). Dr. Johnson noted later that same day that Plaintiff was "not willing to take recommendations or willing to seek alternative solutions" and that she was "very tearful, state[d] no one is willing to help her…no one cares about her and she ha[d] to continue to suffer." (R. at 669).

Plaintiff had multiple visits to the emergency room in 2020, this time mostly for asthma, vomiting, and dehydration. (R. at 27-28). At one visit, she claimed to have fallen while in triage but "security camera footage showed that [she] had controlled her descent to the floor and no seizure activity was noted on the security camera." (R. at 28). The treating physician found Plaintiff to be dramatic in presentation which was partially attributed to her conversion disorder. (R. at 973).

Plaintiff continued to see Dr. Coleman, and although there were periods where she missed treatment, between March 2019 and September 2021, she had approximately forty-two sessions with him. (R. at 1159-1243). His treatment notes reflect that Plaintiff reported a general decrease in the frequency and severity of her symptoms after she began therapy. (*Id.*) However, his notes also mention Plaintiff's continued anxiety about her seizures, especially during stressful periods in her life. (R. at 1166, 1181, 1197, 1237, 1243, 1244).

As part of the initial review of her application for benefits, in January 2021, Dr. Richard Bilinsky, a state agency medical consultant, opined as to Plaintiff's limitations. (R. at 78-92). Dr. Bilinsky found only mild mental limitations and that Plaintiff could perform light work with some additional limitations. (R. at 84-88). He noted, however, that Dr. Coleman had not yet sent in his records. (R. at 84). Based on this agency opinion, Plaintiff's benefits were denied. (R. at 13). After seeking reconsideration, in June 2021, Dr. Ranga Reddy, a second agency consultant,

3

likewise found that Plaintiff could perform light work with similar restrictions but also pointing out the missing records from Dr. Coleman. (R. at 95-102). Reconsideration of the initial benefits determination was denied. (R. at 13).[5]

Plaintiff subsequently requested a hearing before an administrative law judge (ALJ). At the hearing before ALJ Edward Studzinski on December 9, 2021, Plaintiff testified about her seizures, pain, previous work experience, and her everyday life. (R. at 44-64). With respect to her seizures, she stated they had decreased from fifteen to twenty per day down to five to ten per day. (R. at 50-51). A vocational expert (VE), Clifford Brady, also testified. (R. at 68-76). The ALJ posed increasingly severe hypothetical restrictions including for light work, sedentary work, and for "simple, routine tasks." (R. at 69-72). The VE testified that an individual capable of performing light work could perform Plaintiff's previous work as a sales associate but an individual capable of sedentary work only could not. Still, the VE noted that even for sedentary or simple and routine jobs, there were other jobs a person could do in significant numbers in the economy. (R. at 69-72).

ALJ Studzinski issued an unfavorable determination, concluding that Plaintiff was not disabled. (R. at 13-34). He proceeded through the required five-step analysis and made the following findings. At step one, Plaintiff had not engaged in substantial gainful activity. At step two, Plaintiff had severe impairments of asthma, epilepsy, and fibromyalgia. He noted at step three that Plaintiff had not argued she met or equaled any of the listings and, confirmed the same based on his independent review of the evidence.

---

[5] The record reflects that, in October 2021, Plaintiff signed a release for records from Dr. Coleman for treatment from January 2019 to present. (R at 1154-1155).

At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in the regulations and that she had no limitations in her ability to sit, stand, or walk throughout an eight-hour workday but had some other physical limitations. He determined that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record." (R. at 22). Specifically, the ALJ found the two state agency opinions to be persuasive and consistent with the record, and that Dr. Coleman's opinion was not persuasive. Dr. Coleman had opined that Plaintiff had minimal capacity to adapt to changes in her environment, had moderate limitations in concentration, persistence and pace, that she would be off task 21% or more of the time, and would miss work more than three times per month. (R. at 1151-53). He also stated that Plaintiff "will likely have chronic mental health concerns." (R. at 1152).

Based on her RFC, the ALJ determined that Plaintiff could perform her past relevant work as a salesperson. (R. at 32). The ALJ went further and found that even if he had limited Plaintiff to sedentary work or work with simple and routine tasks, she would still not be disabled based on the VE's testimony. (R. at 32).

Plaintiff sought to petition the appeals council for review, but her request was denied, making the ALJ's opinion the final decision of the Commissioner of Social Security. (R. at 1). She timely appealed to this Court.

### SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

The Social Security Administration created a five-step analysis to determine whether an individual is disabled. 20 C.F.R. § 416.920. An ALJ engages in this analysis when reviewing a petition. First, if a claimant is engaged in "substantial gainful activity" then they are not disabled.

*Id*. Second, a claimant must have an impairment or combination of impairments which significantly limits their physical or mental ability to do basic work activities. *Id*. Third, the ALJ must determine whether the claimant's impairments meet or equal one of the "listings." *Id*. The "listings" refers to 20 C.F.R., Subpart P, Appendix 1, which describes various criteria for different impairments that, if met, will satisfy that the claimant is disabled. Fourth, if no listing is met, the ALJ must determine what the claimant's residual functional capacity (RFC) is and determine whether the claimant can perform their past relevant work. *Id*. If a claimant cannot perform their previous work, then the burden shifts to the Commissioner to show that "other work exists in significant numbers in the national economy" which the claimant can perform with their RFC. 20 C.F.R. § 416.960.

If a claimant appeals the ALJ's decision to the district court, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In order to meet the substantial evidence standard, the ALJ's reasoning "must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). When constructing this bridge, an ALJ must analyze all relevant evidence "and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability

6

finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). A "written evaluation of each piece of evidence or testimony is not required," but the ALJ must articulate "reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will not reweigh the evidence or substitute its own judgment in place of the ALJ's if there is substantial evidence to support the ALJ's determination. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## **DISCUSSION**

Plaintiff seeks reversal of the ALJ's judgment on the grounds that the ALJ erred by: (1) violating 20 C.F.R. § 404.1520(c); (2) violating Social Security Regulation (SSR) 16-3p; and (3) omitting a proper analysis of her psychological impairments. In sum, Plaintiff's arguments center on the ALJ's dismissal of Dr. Coleman's opinion as unpersuasive with respect to the determination of her limitations and RFC. The Court agrees that the ALJ failed to build a logical bridge to adequately support his decision about Dr. Coleman's opinion. Therefore, this matter will be remanded for further proceedings consistent with this opinion.[6]

The ALJ provided three primary reasons for discounting the opinion of Dr. Coleman. First, Plaintiff's pseudo-seizures had decreased in frequency and intensity. Second, the record as a whole demonstrated conservative treatment not in line with his recommended limitations. Last, the record did not reflect further panic attacks and Plaintiff denied depression, hopelessness, anxiety, and panic attacks to Dr. Johnson. None of these reasons are adequately supported; thus a remand is appropriate to allow the ALJ to explain the weight, or lack thereof, given to Dr. Coleman's opinion and how this affects Plaintiff's RFC.

---

[6] Because the ALJ erred in determining Plaintiff's RFC, it is not necessary for the Court to analyze the other two arguments. Although the Court did not reach these issues, § 404.1520(c) does not require an ALJ to consider factors besides supportability and consistency.

7

The ALJ focused on Plaintiff's reports that her pseudo-seizures had gotten better and decreased in frequency during the time Dr. Coleman treated her. Plaintiff had been diagnosed by numerous medical professionals with pseudo-seizures which had been observed during an EEG and by her family and a therapist. And she testified at the hearing that her seizures reduced down to five to ten per day but when she had them, they caused symptoms of dizziness and lightheadedness, passing out, and not knowing what is going on for a few minutes.

Improvement in symptoms, however, does not mean that someone is not disabled. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"). Here, Dr. Coleman's notes reflect that Plaintiff continued to experience and worry about her pseudo-seizures consistently. There was a fluctuation in her symptoms as she sometimes reported feeling better and happier but then in further sessions complained of limited functioning due to the pseudo-seizures. As the Seventh Circuit has made clear, the "ALJ was not permitted to cherry-pick from those mixed results to support a denial of benefits." *Id*. at 740 (internal quotations omitted). The ALJ needs to fully explain why he chose to disregard all of the treatment notes which mention a continuation of Plaintiff's seizures and be careful not to fall in to the "regrettably all-too-common, misunderstanding of mental illness" by keeping in mind that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Next, the ALJ's reference to Plaintiff receiving conservative treatment is puzzling. The Court does note that SSR 16-3p requires ALJs to consider reasons why an individual may not have complied with recommended treatment or sought treatment consistent with the degree of their complaints. The ALJ did not do that here. Furthermore, it is not entirely clear why the ALJ

8

considered Plaintiff's treatment to be conservative at all. The record shows that Plaintiff was at some point on as many pain medications as could be safely administered at home. In addition, multiple medical providers told Plaintiff that the only real treatment option was cognitive behavioral therapy (CBT) since her pseudo-seizures, conversion disorder, and fibromyalgia were psychological in origin. Based on this advice, Plaintiff sought such treatment from Dr. Coleman, and was seen by him over a period of time. Significantly, neither of the state agency consultants, whose opinions the ALJ found more persuasive, had Dr. Coleman's extensive records when they rendered their recommendations.

It is true that an ALJ need not adopt the findings of any particular medical opinion. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion."). Indeed, an ALJ is no longer required to give any specific evidentiary weight to a treating physician's opinion. 20 C.F.R. § 404.1520c. Even so, the ALJ must build a logical bridge when explaining how he considered a medical opinion. *Bakke v. Kijakazi*, 62 F.4th at 1066. In that regard, the Court does not follow the ALJ's reasoning in concluding that although Plaintiff engaged in the recommended treatment for pain which cannot be controlled through medication, she should be deemed as having limited herself to conservative treatment or not always following treatment recommendations of her PCP. The connection between these factors and the persuasiveness of Dr. Coleman's opinion has not been adequately explained.

Finally, the ALJ also found that the record did not show treatment for panic attacks and that Plaintiff denied depression, hopelessness, anxiety, or panic attacks to Dr. Johnson on June 22, 2021. There is no mention of Plaintiff denying these things on the cited page. The Court assumes the ALJ construed the section under "Risk Assessment" where it stated "client denies all areas of

9

risk" to mean that Plaintiff denied all of these symptoms and conditions. The Court is not sure exactly what the Risk Assessment section refers to, but given that Dr. Coleman simultaneously continued to treat Plaintiff for depression, anxiety, and PTSD, it does not seem to align with the ALJ's understanding of that language. Because the basis for the ALJ's findings are not fully explained by the record, the dismissal of Dr. Coleman's opinion as unpersuasive was not supported by substantial evidence.

Moreover, by not properly analyzing Dr. Coleman's opinion, it is impossible for this Court to determine if the error was harmless and the ALJ would have determined the same RFC. The ALJ attempted to head this off by referring to the VE's testimony that there would be a significant number of jobs even if the ALJ restricted Plaintiff to simple routine tasks. This logic fails for two reasons. First, the Court has no idea what limitations the ALJ may have included if he had fully analyzed Dr. Coleman's opinion and likewise does not know if the VE's testimony would then have changed. Second, "the ALJ generally may not rely merely on catch-all terms like simple, repetitive tasks because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (internal quotations and citations omitted).

The Court is mindful that it cannot substitute its own judgment in place of the ALJ's. Nevertheless, the Court finds that, under these circumstances, it is unable to conduct a meaningful review because the ALJ did not build a logical bridge between all of the evidence in the record and his step-four conclusion.

## **CONCLUSION**

For the reasons discussed above, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.  This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**DATED**: December 22, 2025      **ENTERED**:

LaShonda A. Hunt
United States District Judge